UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ACTIVISION PUBLISHING, INC.,**<br><br>              Plaintiff,<br><br>      v.<br><br>**GIBSON GUITAR CORPORATION,**<br><br>              Defendant. | Case No. CV-08-01653 MRP (SHx)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION.** |

Before the Court is Plaintiff's Motion For a Preliminary Injunction Enjoining Gibson from Prosecuting a Second-Filed Action in Tennessee.

**I.**

**BACKGROUND**

Plaintiff Activision Publishing Inc. ("Activision") publishes the popular video games and associated peripherals distributed under the "Guitar Hero" trademark. Activision's Second Amended Complaint for Declaratory Relief ("Compl.") ¶8. Activision, a Delaware corporation, is principally located in California. *Id.* ¶1. In November 2006, Activision and Defendant Gibson Guitar Corporation ("Gibson") effectuated a "License and Marketing Support Agreement" ("Contract") that provided Activision a license to use Gibson trademarks and trade dress in connection with the "Guitar Hero" video games and peripherals (collectively, "Guitar Hero").

-1-

*See id.* at Exh F. In exchange for those trademark rights, Activision paid Gibson a one-time, fixed license fee. *Id.*

Gibson owns U.S. Patent No. 5,990,405 ("the '405 Patent"), entitled "System and Method for Generating a Simulated Musical Concert Experience." *Id.* ¶9. On January 7, 2008, Gibson sent a letter requesting that "Activision obtain a license under Gibson's '405 patent or halt sales of any version of the Guitar Hero game software…and…instrument controllers." *Id.* at Exh. B (Letter to Greg Deutch). When Activision requested additional information, Gibson replied on February 18, 2008 with a "Preliminary Claim Chart" comparing the claims of the patent and Guitar Hero, and requesting that Activision respond by February 22, 2008. *Id.* at Exh. C (Letter to Mary A. Tuck). Activision sought additional time to respond, and on March 10, 2008, it denied Gibson's request on the ground that it did not believe that Guitar Hero infringed any valid claim of the '405 Patent. *Id.* at Exh. D (Letter to F. Leslie Bessenger III).

On March 11, 2008, Activision filed the instant suit. As amended, the Complaint seeks declaratory judgment (1) that the Guitar Hero does not infringe the '405 Patent; (2) that the '405 Patent is invalid; (3) that Gibson is barred from alleging infringement by an implied license and the doctrines of equitable estoppel and laches; and (4) that Activision has not breached the Contract. *Id.* ¶¶18-60.

On March 17, 2008, Gibson filed suit in the District Court in the Middle District of Tennessee ("Tennessee Court") against several of Activision's retail customers ("Guitar Hero retailers"), alleging infringement of the '405 Patent. *See* Decl. of James M. Glass In Supp. Mot. For A Preliminary Injunction ("Glass Decl."), at Exh. I (Complaint in *Gibson Guitar Corp. v. Wal-Mart Stores, Inc. et al.,* No. 3:08-CV-279). As amended, the Complaint also names Harmonix Music Systems, Inc. ("Harmonix"), MTV Networks ("MTV"), and Electronic Arts, Inc. ("EA"), and alleges that video games distributed under the "Rock Band" name infringe the '405 Patent as well. *Id.* at Exh. L.

On March 20, Gibson filed another suit in the Tennessee Court, naming Harmonix, MTV, EA, and alleging that the Rock Band and Guitar Hero products infringe the '405 Patent. *Id.* at

1  Exh. J (Complaint in *Gibson Guitar Corp. v. Harmonix Music Systems, Inc. et al*, No 3:08-cv-294).

Plaintiffs now move the Court to enjoin Gibson from prosecuting a "second-filed infringement suit" involving the same patent or against their customers.[1]

## II.
## LEGAL STANDARD

This Court has discretion to enjoin Gibson from proceeding with a later-filed infringement action in another district court. *See Katz v. Lear Siegler, Inc.,* 909 F.2d 1459 (Fed. Cir. 1990). According to the general rule, when two similar cases are filed, the forum of the first-filed case is favored. *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993) (overruled on other grounds). *See also Elecs. For Imaging v. Coyle* 394 F.3d 1341, 1347 (Fed. Cir. 2005) (citing *Genentech*). However, the first-to-file rule should not be applied if "considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise." *Genentech*, 998 F.2d at 938. "Exceptions …are not rare," but "[t]here must …be sound reason that would make it unjust or inefficient to continue the first-filed action." *Id.* at 937-38. *See also Elecs. For Imaging*, 394 F.3d at 1347.

A court should assess the rule with an eye towards the convenience and availability of witnesses, the comprehensive disposition of litigation, and the conservation of judicial resources. *Genentech*, 998 F.2d at 938. The factors relevant to a 28 U.S.C. §1404(a) motion to transfer ("§1404(a) factors") inform the analysis of the first-to-file rule. *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008) (explaining that "instead of…automatically

---

[1] As may be evident from the Court's description, it remains unclear what differs between the two cases proceeding in the Tennessee Court. While the 3:08-cv-279 Complaint initially only involved Guitar Hero and its retailers (or, according to Activision, "customers"), it was amended to cover Rock Band and include other defendants, such as Harmonix. It appears that both suits now allege infringement of the '405 Patent by Guitar Hero and Rock Band and concern highly overlapping sets of Defendants. *See* Glass Decl. at Exhs. L, J. To further confuse the matter, Activision is imprecise in its injunction request. It suggests that it seeks to enjoin Gibson from pursuing infringement altogether in Tennessee, *see* Pl. Mot. at 1 (seeking an order enjoining Gibson from prosecuting a second-filed suit involving the same patent), but then limits its description of the "Tennessee Action" to the March 17 case, *see* Pl. Mem. Of P. & A. at 1. The Court proceeds by discussing both Tennessee cases.

-3-

1  going with the first filed action" a Court should take account of the convenience factors under 28
2  U.S.C. § 1404(a)).  Section 1404(a) factors include (1) the location of the events giving rise to
3  the suit; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the relative
4  ease of access of proof; (5) the availability of process for unwilling witnesses; (6) plaintiff's
5  choice of forum; (7) a forum's familiarity with the governing law; (8) trial efficiency; and (9) the
6  interest of justice.  *Broad. Mktg. Int'l, Ltd. v. Prosource Sales & Mktg., Inc.*, 345 F. Supp. 2d
7  1053, 1063 (N.D. Cal. 2004).

## III.
## DISCUSSION

**A.  The Court Denies Activision's Request For a Preliminary Injunction.**

   The Court denies Activision's request for a preliminary injunction against Gibson. Activision raises several compelling points about the identity of the cases proceeding here and in Tennessee, including the presence of an indemnification agreement between Activision and retailers.  But the first-to-file rule – as illustrated by the vast majority of cases cited by the parties – is more naturally applied by a court considering transferring, staying, or dismissing a <u>second</u>-filed action when a similar complaint has been filed elsewhere.  *See, e.g., Ward v. Follett Corp., 158 F.R.D. 645, 648* (N.D. Cal. 1994) (dismissing a second-filed case because "[t]he well-established 'first to file' rule allows a district court to transfer, stay or dismiss an action when a similar complaint has been filed in another federal court"); *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 623 (9th Cir. 1991) (analyzing the first-to-file rule in the context of a second-filed case); *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1079-1081 (Fed. Cir. 1989); *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982); *Thomas & Betts Corp. v. Hayes*, 222 F. Supp. 2d 994, 996 (W.D. Tenn. 2002); *Shire U.S., Inc. v. Johnson Matthey, Inc.,* No. 07-CV-2958, ___ F. Supp. 2d ___, 2008 WL 399333 (E.D. Pa. Feb. 14, 2008).

   The Tennessee Court has multiple suits proceeding similar to this one, and is better positioned than this Court to assess the scope, substance, and procedural history of each of the

second-filed suits.  *See, e.g., infra* at n.1 (describing the apparent overlap in the Tennessee cases caused by Gibson's amendment and the imprecision of Activision's description of those cases). The Court finds it appropriate to permit the Tennessee Court to adjudicate these points concerning the second-filed actions.

### B.  The Court Declines to Transfer the Declaratory Patent Claims.

In addition to opposing Activision's motion for a preliminary injunction, Gibson requests[2] dismissal of the patent claims or the transfer of them to the Tennessee Court pursuant to 28 U.S.C. §1404(a).[3]  The Court denies both of Gibson's requests because the §1404(a) factors – when combined with the general rule favoring the forum of the first-filed case – favor adjudicating Activision's patent claims in this Court.

#### 1.  The Anticipatory Filing Exception to the First-to-File Rule Is Inapplicable.

Gibson, citing an exception to first-to-file rule where the circumstances evidence "bad faith, anticipatory suit, and forum shopping," *Z-Line Designs v. Bell'O Int'l LLC*, 218 F.R.D. 663, 665 (N.D. Cal. 2003), argues that the exception applies here because Activision "lulled" it into a "false belief that negotiations were occurring" while racing to the court house to file suit for declaratory relief in anticipation of an infringement suit.

The Court declines to provide an exception to the first-to-file rule under these circumstances for two reasons.[4]  First, unlike the *Z-Line* case, the parties' exchanges provide no indication that Activision opened the door to negotiations or otherwise "tacitly accepted that it was willing to explore settlement," 218 F.R.D. at 666.  For example, Activision's January 17 letter, which Gibson states was "calculated" to suggest that the parties were negotiating, clearly

---

[2] Gibson did not file a motion to transfer or dismiss the claims, and makes these requests in its opposition to Activision's request for an injunction.

[3] The Court reaches this conclusion without any consideration of the contract-related claim added by Activision in its amended complaint.  Certainly that claim is largely independent at this juncture of any proceeding in Tennessee.

[4] In any event, these factors may not provide a clear cut exception to the first to file rule.  "While …a district court may consider whether a party intended to preempt another's infringement suit when ruling on the dismissal of a declaratory action," the Federal Circuit cautions that that consideration is "merely one factor in the analysis." *Elecs. For Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347-1348 (Fed. Cir. 2005).

-5-

only requests more information about the patent to assess Gibson's demand. Gibson was free to file suit at any point then, or indeed, in the previous several years that the allegedly infringing product was on the market. Activision acted in the way one might expect after receiving a license request that could cloud a popular product with a veil of patent infringement: they diligently assessed the matter and promptly filed declaratory suit seeking to remove the cloud. Any other belief Gibson gathered from these communications cannot support a departure from the first-to-file rule.[5]

Second, and even more importantly, Gibson never provided any "specific, concrete indication[] that a suit … was imminent," a prerequisite for the anticipatory filing exception, *Z-Line*, 218 F.R.D. at 665 (citations omitted). *See also Guthy-Renker Fitness, L.L. C. v. Icon Health & Fitness, Inc.,* 179 F.R.D. 264, 271 (C.D.Cal. 1998) ("A suit is 'anticipatory' for the purposes of being an exception to the first-to-file rule if the plaintiff in the first-filed action filed suit on receipt of specific, concrete indications that a suit by the defendant was imminent"). Rather, Gibson only communicated that it takes the "threat to its intellectual property seriously and is prepared to discuss any reasonable resolution to the matter," which is very different than the scenario in *Z-Line*. *See* 218 F.R.D. at 664 (citing a phone call where patentee's counsel provided a final deadline for settlement, after which suit would be filed); *Id.* at 665 (quoting a patentee's communication that it "is willing to take all steps necessary to fully protect its intellectual properties, including commencing an action in an appropriate United States District Court if Z-Line does not comply" with its requests). *See also Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*, No. C 07-4634, 2008 WL 753731, at *9-10 (N.D. Cal. March 19, 2008) (stating that "a letter which suggests the possibility of legal action…in order to encourage or further a dialogue, is not a specific, imminent threat of legal action.") (citations omitted).

Gibson also argues that giving significant weight to Activision's first-filed status undermines "public policy favoring private dispute resolution rather court intervention,"

---

[5] Activision further argues that the exception cannot possibly apply because Gibson still has not filed suit against it (as the Tennessee suit only involves Activision's customers). The Court declines to address this argument. It is unnecessary because the evidence here does not support the exception regardless of the absence of Activision in the second-filed suit.

-6-

particularly in view of the more lenient standard for declaratory judgment jurisdiction provided by *MedImmune v. Genentech*, 549 U.S. 118, 127 (2007). *MedImmune* certainly does provide both parties greater incentive "to race to the courthouse to seek a forum more convenient and amenable to their legal interests." *Micron*, 518 F.3d at 904. However, in addressing that very concern, the Federal Circuit did not abrogate the first-to-file rule. Rather it cautioned against the use of the first-to-file rule in a rigid manner. *Id.* Here, where there is nothing on the record to suggest that Activision acted in bad faith or intended to preempt Gibson's suit, the Court will not penalize the first-filing party for its choice of forum. As instructed by the Federal Circuit, the Court proceeds by favoring the forum of the first-filed suit, but affording due weight to the §1404(a) factors. *See id.*

### 2.  The 1404(a) Factors Do Not Support Transferring This Case.

Gibson provides five considerations in support of transfer or dismissal of the declaratory claims. According to Gibson, the convenience of the witnesses and parties favors Tennessee because "the most relevant party in the dispute is Harmonix" (which is located in Massachusetts). Second, and similarly, "the central location" of Tennessee is more convenient than Los Angeles for the retailers, and many of the documents will come from Gibson, located in Tennessee. Third, Tennessee has an interest in the suit because the patent at issue was created by Gibson employees in Tennessee. Fourth, because "[p]atent infringement is a matter of federal law governed by…the Federal Circuit" the Tennessee Court is an appropriate forum for adjudication of the dispute. Lastly, the public interest favors Tennessee because (1) "resolution of this case will not resolve Gibson's claims against the remaining Tennessee Action defendants, especially as to Rock Band"; and (2) the crowded condition of the docket in the Central District of California may interfere with an expedient resolution.[6]

---

[6] Gibson also asserts that under §1404(a) its choice of forum should be afforded deference due to Activision's "pre-emptive" selection of California. Because the Court finds that argument unpersuasive, *see* Section II.B.1, *infra*, it will not address it in the context of the §1404(a) factors.

1       It is undisputable that Tennessee is closer geographically to Harmonix (Massachusetts)
2   than this Court, and that Tennessee, being located closer to the center of the country, may be
3   more convenient to some of the parties who hail from the other side of the country.  This is a
4   very weak circumstance in favor of transferring this case to Tennessee that cannot overcome the
5   deference afforded to first-filer Activision's choice of forum.  As Activision's principal place of
6   business is in the Los Angeles area, there is a strong interest in proceeding with its declaratory
7   claims in this state.  Further, although the Court is unable to predict with precision the locus of
8   discovery because the parties dispute who "manufactured" the game, it is clear that some
9   discovery will involve California due to Activision's location.[7]  Even if discovery at Harmonix is
10  required, it would take place in Massachusetts rather than Tennessee.  Also, while resolution of
11  this case will not necessarily dispose of the Rock Band allegations, it will significantly advance
12  the proceedings in Tennessee, *see Probatter Sports* v. *Joyner Tech.,* 463 F. Supp. 2d 949, 956
13  (N.D. Iowa 2006), because issues of patent invalidity and claim construction will certainly
14  overlap, and issues of Rock Band's infringement will likely overlap due to the conceptual
15  similarity in the games.[8]
16      Additionally, the Federal Circuit has warned that if "a patent holder could simply name
17  another defendant or add a few additional claims to the later filed infringement" claim, the
18  *MedImmune* decision could "lose its primary intended effect." *Micron*, 518 F.3d 904.  The
19  inclusion of retailer defendants and Harmonix in the infringement suits in Tennessee – at least as
20  they relate to Guitar Hero – must be viewed from that perspective.  Here, Gibson has not shown
21  that the issues involving these other parties' alleged patent infringement are significantly
22  different than Activision's so as to warrant transfer to the Tennessee Court.
23      Gibson need not fear that this Court's "crowded" docket will interfere with a speedy
24  resolution of this case.  The Court will proceed as expeditiously as the parties desire, whether for

---

[7] Activision also provides other connections to the state of California which provide some support for adjudicating the claims here.  *See* Activision's Repl., at 15 (stating that one of the inventors named on the patent is a California resident, and EA and MTV have a presence in California).

[8] While the Court will not engage in undue speculation as to similarities in Guitar Hero and Rock Band, it notes that the single distinction cited by Gibson – that Rock Band involves both guitars and drums, *see* Gibson's Opp. at 17 – suggests that infringement issues for the two products will very likely overlap.

only the claims between Gibson and Activision or any other claims the Tennessee Court transfers here.

## IV.
## CONCLUSION

For the reasons stated above, the Court denies Activision's Motion requesting an injunction and also declines to transfer or dismiss any declaratory claims. As indicated at the May 19 hearing, the Court intends to proceed by conducting a Markman hearing to construe any disputed claim terms of the '405 Patent.

IT IS SO ORDERED.

DATED: May 20, 2008

_____
Hon. Mariana R. Pfaelzer
United States District Judge